**In re Steven Lynn HORNSBY and Teresa Lynn Hornsby, Debtors.**

**Steven Lynn HORNSBY and Teresa Lynn Hornsby, Plaintiffs,**

**v.**

**TENNESSEE STUDENT ASSISTANCE CORPORATION, Defendants.**

**Bankruptcy No. 93–11057.**
**Adv. No. 93–0660.**

United States Bankruptcy Court,
W.D. Tennessee,
Eastern Division.

Nov. 15, 1995.

Opinion Following Remand April 24, 1996.

Albert B. Merkel, Jackson, TN, for Debtors.

Teresa C. Azan, Assistant Attorney General, Tax Division, Nashville, TN.

### MEMORANDUM OPINION AND ORDER RE COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

G. HARVEY BOSWELL, Bankruptcy Judge.

Debtors Steven Lynn Hornsby and Teresa Lynn Hornsby filed this complaint to determine the dischargeability of their student loans pursuant to 11 U.S.C. § 523(a)(8)(B). Tennessee Student Assistance Corporation ("TSAC") objects to the discharge of this debt. Pursuant to Fed.R.Bankr.P. 7001 *et seq.*, this Court conducted a hearing on this adversary proceeding on September 29, 1995. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I). The following shall serve as

this Court's Findings of Fact and Conclusions of Law pursuant to Fed.R.Bankr.P. 7052.

## I. Findings of Fact

The Court bases its opinion on the following stipulated facts and the record.

1. Debtors filed a voluntary Chapter 7 with this Court on May 25, 1993. This adversary proceeding was commenced on or about July 13, 1993. The Debtors received their discharge in this case on April 29, 1994.

2. Defendant is a nonprofit corporation created to administer student assistance programs authorized by law pursuant to Tenn. Code Ann. §§ 49-4-201 *et seq.* (1989 & 1992 Supp.). Defendant is governed by a board of directors consisting of a number of state officials, and one of the primary purposes of TSAC is to receive state and federal funds for the purpose of guaranteeing student loans. Tenn.Code Ann. §§ 49-4-202, 49-4-203 (1989 & 1992 Supp.).

3. Debtor Steven Hornsby is indebted to TSAC in the amount of $15,058.52 plus interest, attorney's fees and costs, resulting from TSAC's purchase of seven (7) student loans executed by Mr. Hornsby for attending school.

4. These student loans were subsequently sold by First American National Bank to Sallie Mae.

5. The first payment on two (2) Stafford loans was due on January 21, 1991. After several deferments and forebearances on these student loans, Debtor defaulted on June 21, 1993.

6. As a result of such default, Sallie Mae submitted its first claim to TSAC, the guarantor, for these two loans on July 2, 1993.

7. TSAC purchased the two Stafford loans from Sallie Mae on September 30, 1993.

8. After several forebearances, Debtor's three additional Stafford loans became due and owing on March 21, 1993.

9. Due to Debtor's default of those notes, TSAC purchased the loans from Sallie Mae on September 30, 1993, and paid Sallie Mae its claim of $4,157.88.

10. Mr. Hornsby then defaulted on two (2) SLS loans in the amount of $2,000 and $1,000, respectively. Sallie Mae again submitted claims to TSAC as a result of the default in the amounts of $2,311.50 and $1,124.27. Both claims were paid by TSAC on September 23, 1993 and September 30, 1993, respectively.

11. All loans obtained by Mr. Hornsby have been in repayment for less than seven years.

12. Mr. Hornsby was a full-time student from 1987 to 1989. From April 1989 to August 1990, Debtor was employed as a computer operator at Motor Parts & Bearing earning approximately $3.25 per hour. Mr. Hornsby worked forty (40) hours a week.

13. From January 1993 to sometime in 1994, Mr. Hornsby was employed at Jackson Appliance Company earning $8.25 per hour as a machine operator. Debtor worked a 40 hour week until becoming unemployed.

14. Debtor is currently employed by AT & T earning $6.53 per hour based upon a 40 hour work week.

15. Plaintiff Teresa Lynn Hornsby is indebted to TSAC in the amount of $18,329.15 plus interest, attorney's fees and costs, resulting from TSAC's purchase of seven (7) student loans executed by Teresa Lynn Hornsby for attending Jackson State Community College, Bethel College, and Union University.

16. After several deferments and forebearances, the first payment on three (3) Stafford loans, each in the amount of $2,625.00, became due and owing on October 14, 1992. Plaintiff defaulted on the loans April 14, 1993.

17. As a result of such default, Sallie Mae submitted its first claim to TSAC, the guarantor, for the three (3) Stafford loans on June 23, 1993.

18. TSAC purchased the three (3) Stafford notes from Sallie Mae on September 16, 1993, and paid Sallie Mae its claim of $10,316.63.

19. Thereafter, Teresa Hornsby's three (3) additional Stafford loans in the amounts of $2,000, $1,283, and $617 became due and

owing. Upon default by Mrs. Hornsby, Sallie Mae submitted its claim June 23, 1993 in the amount of $4,070.96 which was paid by TSAC on September 16, 1993.

20. Mrs. Hornsby then defaulted on an SLS loan in the amount of $2,000, which became due March 14, 1992. Sallie Mae again submitted its claim to TSAC as a result of the default in the amount of $2,337.56. TSAC paid the claim on October 28, 1993.

21. All loans obtained by Mrs. Hornsby have been in repayment for less than seven years.

22. Mrs. Hornsby was a full-time student from 1987 to 1989. Mrs. Hornsby subsequently became employed by Mighty Product Center from December 1988 to March 1990, earning $5.50 per hour based upon a 40 hour work week.

23. From December 1991 to the present, Mrs. Hornsby has been employed by Kinder-Care Learning Center. Her current salary is $17,500 per year.

24. Debtors have three (3) dependent children currently living with them.

25. Exhibits 1 through 34 were authenticated by stipulation and were admitted.

## II. Conclusions of Law

■ Debtors are seeking a discharge of their student loans pursuant to 11 U.S.C. § 523(a)(8)(B), which allows such a discharge only if "excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents." The burden of proving undue hardship by a preponderance of the evidence lies with the debtor seeking discharge. *See Daugherty v. First Tennessee Bank (In re Daugherty)*, 175 B.R. 953, 955 (Bankr. E.D.Tenn.1994). While various tests have been advocated by various courts, including a totality of circumstances test,[1] *see D'Ettore v. Devry Institute of Technology*, 106 B.R. 715, 718, the Sixth Circuit in *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994), set forth three appropriate factors to consider when determining whether undue hardship exists: (1) whether the debtor is capable of

paying the loans while maintaining a minimal standard of living; (2) whether the debtor's financial situation will improve in the foreseeable future; and (3) whether the debtor is acting in good faith or is attempting to abuse the student loan system by having a loan forgiven before embarking upon a lucrative career in the private sector. *Id.* at 359–60. This Court will base its determination by applying the factors established by the *Cheesman* court to the facts of this case.

### A. Ability to Pay Student Loans and Maintain a Minimal Standard of Living

■ First, the Court will consider whether Debtors are capable of paying the student loans while maintaining a minimal standard of living. To do so, the Court must compare Debtors' expenses versus their income. Mr. Hornsby has a net monthly income of $1,083.33 based on a 40 hour work week. Exhibit 34. Recently, Mr. Hornsby has been working overtime. As a result, his net monthly income for September 1995 was $1,172.00. Mrs. Hornsby has a net monthly income of $1,473.33. Together they have a total monthly net income of $2,556.66. Exhibit 34. The Debtors estimate their monthly expenses to be $2,364.90 as of September 21, 1995. Exhibit 33. This leaves an excess of approximately $191.76 to $280.43 per month, depending on Mr. Hornsby's overtime. The estimate of monthly expenses does not take into account, however, any unexpected expenses such as car repairs. Mr. Hornsby testified at trial that over the past year he has been unable to meet all of his monthly living expenses like utilities and car insurance on at least four occasions due to such unexpected expenses.

■ TSAC counters Mr. Hornsby's testimony by arguing that Debtors have not taken any steps to reduce their living expenses. TSAC contends that if Debtors took such steps, money would be available to pay their student loans and maintain a minimal standard of living. First, TSAC contends that Debtors have demonstrated an inability to cut expenses since filing their bankruptcy

---

1. The result of this case would be the same under the totality of the circumstances test.

petition. As evidence of this, TSAC points to high telephone bills, high electrical expenses, increased car payments, incurrment of fines to obtain a driver's license for Mr. Hornsby, cigarette expenses, and increased rent. TSAC maintains that Debtors are continuing in the same lifestyle that led them into bankruptcy in the first place and, as a result, have not demonstrated the sort of sacrifice courts have deemed necessary to establish undue hardship. *See In re Brown,* 18 B.R. 219, 224 (D.Kan.1982). While the Court is cognizant of the importance of Debtors limiting and even lowering their expenses, the Court must look at these Debtors and their situation before summarily deciding that Debtors have failed to "tighten their belts" since filing bankruptcy.

TSAC specifically points to the fact that Debtors purchased a used car to replace on older car. This purchase increased Debtors' monthly car payment. Mr. Hornsby testified that they bought the newer car because the older car was in need of several repairs. The Debtors believed that the higher monthly car payments ultimately would be less than the repairs that inevitably would have to be made to the older car. The newer car, however, has required service and repairs, which has caused Debtors to become delinquent on monthly expenses. As a result, TSAC questions the purchase as it has not only caused Debtors to make higher car payments but has also led to the type of expense that has caused Debtors to default on their ongoing monthly expenses. According to Debtors, they purchased the newer car to alleviate any expenses they were certain would arise with the older car. This Court will not hold Debtors to 20/20 hindsight regarding this purchase. Debtors in good faith attempted to gain more control over their expenses by buying what they believed was a more reliable car.

Additionally, TSAC points to Debtors' move to Dallas, Texas, as evidence of Debtors' inability to control their rising living expenses. As a result of the move, Debtors' rent increased to $670 from $400 for a two bedroom apartment. Debtors also had to pay one-time expenses for deposits and connection fees when they moved into their apartment in Dallas. The Court realizes that living expenses are higher in Dallas than they are in Jackson; however, the Court is of the opinion that Debtors moved to Dallas in an attempt to obtain better job security for Mrs. Hornsby. Further, the Court does not believe that in these circumstances the expense associated with moving to Dallas in and of itself indicates an inability of Debtors to "tighten their belts."

■ Finally, TSAC points out that Debtors income for 1993 and 1994 exceeds the 1993 and 1994 poverty income guidelines for a family of five as published in the Federal Register. Exhibits 25 and 26. Further, Debtors' projected income of over $36,000 for 1995, based on Debtors' replies to interrogatories, also will exceed the 1995 poverty income guidelines for a family of five of $17,710.. Exhibit 27. Thus, according to TSAC, Debtors are living well beyond the government guideline of a minimal standard of living, a factor that several courts have used to deny discharge of student loans. *See Medeiros v. Florida Department of Education (In re Medeiros),* 86 B.R. 284, 286 (Bankr. M.D.Fla.1988); *Bryant v. Pennsylvania Higher Education Assistance Agency (In re Bryant),* 72 B.R. 913, 915 (Bankr.E.D.Pa. 1987).

The Court is aware that Debtors earn well above the established poverty level. The Court is of the opinion, however, that, because Debtors testified that they have fallen behind in their bills four times in the past year and based on statements made by TSAC's attorney that Debtors' estimated monthly expenses are understated, Debtors are currently unable to pay these student loans and maintain a minimal standard of living. Based on the record in this case, requiring Debtors to pay these student loans will cause Debtors to default on several of their existing obligations. While the Court is aware of the reliance of other courts on the poverty guidelines, this Court is of the opinion that Debtors should not be forced to live at or near the poverty level in order to prove an undue hardship exception to the nondischargeability of student loans.

## B. Likelihood of Financial Improvement in the Foreseeable Future

The second factor to be considered according to the Sixth Circuit is whether the debtor's financial situation will improve in the foreseeable future. It is apparent to the Court that Mrs. Hornsby's position as director of a KinderCare facility is a step in the right direction; however, according to Mr. Hornsby's testimony and responses to interrogatories, his position at AT & T is considered temporary for the first 36 months of his employment. Mr. Hornsby admitted at trial that he has not been informed by anyone in management at AT & T that his job is in jeopardy. Thus, according to TSAC, there is no proof that Mr. Hornsby is in danger of losing his job. While this is true, TSAC did not set forth any proof that Debtors' financial situation will improve in the foreseeable future. The Court realizes that the potential always exists for either Mr. or Mrs. Hornsby to obtain a better paying job; however, the likelihood of that occurring in the foreseeable future has not been established.

## C. Good Faith Versus Abuse of the Student Loan System

■ The third factor to consider is whether Debtors are acting in good faith or attempting to abuse the student loan system by having a loan forgiven before embarking upon a lucrative career in the private sector. TSAC contends that Debtors did not make a good faith effort to repay their student loans. Further, TSAC contends that Debtors have not made a good faith effort to cut expenses. Debtors utilized the deferment and forbearance options available to them. Prior to making any payments to TSAC, Debtors filed their bankruptcy petition. The Court will not summarily hold that Debtors did not act in good faith because they never made a payment to TSAC. Debtors properly deferred their payments, but were unable to meet their financial obligations exclusive of their obligation to TSAC. Further, no proof was presented indicating that Debtors are

embarking upon lucrative careers in the private sector. Debtors are currently working at respectable jobs; however, they do not produce enough income to repay a $33,387.67 loan.[2] The Court finds that Debtors have done nothing to indicate they have not acted in good faith while pursuing careers that would enable them to repay the debt.

As a result of applying the three factors enumerated by the *Cheesman* court, this Court finds that Debtors proved by a preponderance of the evidence that paying these student loans would impose an undue hardship on them and their family. As a result, their debt to TSAC for student loans in the amount of $33,387.67 is discharged.

It is therefore **ORDERED** that the student loan debt of $33,387.67 is discharged. It is **FURTHER ORDERED** that TSAC's objection to discharge is denied.

## ADDITIONAL FINDINGS OF FACT

This Court entered its Memorandum Opinion and Order re Complaint to Determine the Dischargeability of Debt on November 15, 1995. In that opinion, this Court discharged the debtors' student loan debt, holding that repayment of such debt would cause an undue hardship on the debtors. The United States District Court for the Western District of Tennessee affirmed in part and remanded the case for further findings. In so holding, the District Court noted that this Court followed the three-prong test adopted by the Court of Appeals for the Sixth Circuit in *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994) (adopting the Second Circuit test articulated in *Brunner v. New York State Higher Educ. Svcs. Corp.*, 831 F.2d 395, 396 (2d Cir.1987)). To discharge a student loan on the basis of undue hardship pursuant to § 523(a)(8)(B), the debtor must show (1) that he cannot maintain a minimal standard of living based on current income and expenses if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for

---

**2.** This Court is aware of its previous decision in *Parker v. Tennessee Student Assistance Corp.*, Ch. 7 Case No. 93–12353, Adv. No. 94–0124, unpublished op. (Bankr.W.D.Tenn. Sept. 28, 1994). In

that case, however, the student loan sought to be discharged was in the amount of $2,928.73, an amount that could be paid out over several payments.

a significant portion of the repayment period of the loans; and (3) that the debtor has made a good faith effort to repay the loan. *Brunner*, 831 F.2d at 396. The District Court affirmed this Court as to the first and third prongs; however, the District Court remanded the case for further findings regarding whether the circumstances that prevent payments on the student loans are likely to persist for a significant portion of the loan repayment period.

As this Court stated in its original opinion, Mr. Hornsby is employed by AT & T where he earns $6.53 per hour based on a 40 hour work week. His employment, however, is considered temporary for the first three years. Thus, at any time during the three year period, AT & T may discharge Mr. Hornsby from his employment without cause. No proof was presented that there is a likelihood that Mr. Hornsby will lose his job during this three year period; however, if Mr. Hornsby retains his job for the three year period, his salary will not significantly rise. Further, no proof was presented to indicate that if Mr. Hornsby becomes a permanent employee his salary will increase above the cost of living. The Court is cognizant that Mr. Hornsby will be eligible for and likely receive pay raises at AT & T over the next several years. These raises, however, will likely not be significant without a promotion. Further, there is little expectation that if Mr. Hornsby were able to obtain another job that it would pay significantly more than what he earns at AT & T.

As with Mr. Hornsby, Mrs. Hornsby does not seem likely to obtain work making significantly more money than she now earns as the manager of the KinderCare location where she is employed. Further, based on the fact that the Hornsbys moved to Dallas because of Mrs. Hornsby's promotion to manager of this KinderCare facility, it is unlikely that Mrs. Hornsby will actively seek new employment in the near future. Thus, Mrs. Hornsby's earning capacity is likely to remain relatively the same over the next several years. While both Mr. and Mrs.

Hornsby may actively seek better employment or promotions at their current jobs, "[t]here is no assurance ... that either will obtain their objectives." *Cheesman*, 25 F.3d at 360. Further, there is nothing in the debtors' past work history to indicate that a job change by either or both of the debtors would produce significantly more income.[1] *See Rice v. United States (In re Rice)*, 78 F.3d 1144, 1150 (6th Cir. (Ohio)) (holding that the debtor physician, a recipient of a medical student loan, was "relatively young as well as healthy, and in all likelihood his income will increase in the future").

■ The District Court also raised the question regarding the extent to which the debtors will continue to incur daycare expenses. The debtors' have three minor children ages 8, 5, and 2. The debtors pay for daycare for their two youngest children at an expense of $65 per week; the 8 year old does not attend any daycare because the debtors cannot afford to pay for daycare for three children. The Court acknowledges that at some unknown point in the future the minor children will be able to stay at home after school without adult supervision. While the Court encourages the debtors not to prolong their daycare expenses any longer than necessary, the Court does not believe that it should serve the role of parent and set a deadline by which the debtors may no longer incur daycare expenses. Such a decision is one better left to the parents. Thus, while the Court acknowledges that the debtors will no longer need to pay for daycare at some point in the future, the additional money that the debtors will save is not so significant as to cause the debtors to fail the second prong of the *Cheesman* test.

This Court therefore finds that the debtors' financial situation will not improve in the foreseeable future. The Court further finds that because debtors' financial situation will not improve in the foreseeable future, a delay in granting a discharge to debtors of their student loan debts would serve no purpose and would frustrate the intent of the "fresh

---

1. According the the Amended Trial Brief of Defendant Tennessee Student Assistance Corporation submitted on September 29, 1995, Mr. Hornsby earned $3.25 per hour to $8.25 per hour, based on a 40 hour work week, during the period from 1989 to the present. From 1988 to the present, Mrs. Hornsby has earned from $5.50 per hour to her current annual salary of $17,500.

start" contemplated by the drafters of the Bankruptcy Code.