**In re Steven Lynn HORNSBY and Teresa Lynn Hornsby, Debtors.**

**Steven Lynn Hornsby and Teresa Lynn Hornsby, Plaintiffs,**

**v.**

**Tennessee Student Assistance Corporation, Defendant.**

**Bankruptcy No. 93–11057. Adversary No. 93–0660.**

United States Bankruptcy Court, W.D. Tennessee, Eastern Division.

Dec. 29, 1999.

Albert Merkel, Jackson, TN, for debtors.

Sally Ramsey, Assistant Attorney General, Tax Division, Bankruptcy Unit, Nashville, TN, for TSAC.

## MEMORANDUM OPINION AND ORDER RE COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

G. HARVEY BOSWELL, Bankruptcy Judge.

Debtors Steven Lynn Hornsby and Teresa Lynn Hornsby originally filed this adversary proceeding to determine the dischargeability of their student loans on July 13, 1993. Pursuant to the terms of the complaint, the Hornsbys allege that they are entitled to a discharge of their loans under the hardship provision of 11 U.S.C. § 523(a)(8)(B).[1]  On November 15, 1995,

---

1. At the time of filing the adversary complaint, 11 U.S.C. § 523(a)(8) contained two subsections. Subsection A provided for the discharge of student loans which became due more than seven years prior to the filing of the bankruptcy petition. Subsection (B) provided for the discharge of student loans if repayment would impose an undue hardship

this Court issued a "Memorandum Opinion and Order re Complaint to Determine Dischargeability of Debt" in which it discharged the debtors' student loan debt, holding that repayment of such debt would cause an undue hardship on the debtors. The United States District Court for the Western District of Tennessee affirmed in part and remanded the case to this Court for further findings.

Following the District Court's remand, this Court found, on April 24, 1996, that the "debtors' financial situation will not improve in the foreseeable future" and "a delay in granting a discharge to debtors of their student loan debts would serve no purpose and would frustrate the intent of the 'fresh start' contemplated by the drafters of the Bankruptcy Code." *Hornsby v. Tennessee Student Assistance Corp. (In re Hornsby)*, 201 B.R. 195, 201 (Bankr. W.D.Tenn.1995). That decision was subsequently affirmed by the District Court for the Western District of Tennessee, but was reversed and remanded to this Court by the Sixth Circuit on June 9, 1998.

In accordance with the Sixth Circuit's remand, this Court conducted a rehearing in this matter on November 29, 1999. FED.R.BANKR.P. 7001. Pursuant to 28 U.S.C. § 157(b)(2), this is a core proceeding. After reviewing the testimony from the trial and the record as a whole, the Court makes the following findings of facts and conclusions of law. FED.R.BANKR.P. 7052.

## I. FINDINGS OF FACT

At the trial in this matter, the parties submitted "Stipulations of Facts," which the Court hereby adopts and incorporates as its own:

1. Steven Lynn Hornsby and Teresa Lynn Hornsby ("Plaintiffs") filed a voluntary Chapter 7 petition with this Court on May 25, 1993. This adversary was originally commenced on or about July 13, 1993. The case was appealed up to the 6th Circuit Court of Appeals, and was remanded for rehearing on June 9, 1998.

2. The Defendant Tennessee Student Assistance Corporation ("TSAC") is a nonprofit corporation created to administer student assistance programs authorized by law pursuant to *Tenn.Code Ann.* §§ 49–4–201 *et seq.* (1989 & 1992 Supp.). TSAC is governed by a board of directors consisting of a number of state officials, and one of the primary purposes of TSAC is to receive state and federal funds for the purpose of guaranteeing student loans. *Tenn.Code. Ann.* §§ 49–4–203 (1989 & 1992 Supp.). *Tenn.Code Ann.* §§ 49–4–202, 49–4–203 (1989 & 1992 Supp.).

3. Plaintiff Steven Hornsby is indebted to TSAC in the amount of $16,250.00 plus interest and attorneys fees and costs resulting from TSAC's purchase of seven (7) student loans executed by Plaintiff Steven Hornsby and subsequently purchased by TSAC under its guarantee.

4. The total amount owed to TSAC by Plaintiff Steven Hornsby for the loans referred to in (3) above, including interest up to and including November 19, 1999, is $20,779.52.

5. The monthly payment on Plaintiff Steven Hornsby's student loans, based on a 10 year term at 8% interest, is $248.90.

6. Plaintiff Teresa Hornsby is indebted to TSAC in the amount of $17,875.00 plus interest and attorneys fees and costs resulting from TSAC's purchase of seven (7) student loans executed by Plaintiff Teresa Hornsby and subsequently purchased by TSAC under its guarantee.

on the debtor. In 1998, Congress amended § 523(a)(8) to eliminate subsection (A) from the statute, Pub.L. 105–244, § 971(a) (codified as amended at 11 U.S.C. § 523(a)(8) (1998)). Consequently, § 523(a)(8) now allows the discharge of student loans only in cases of undue hardship. This amendment has no effect on the debtors' complaint.

7. The total amount owed to TSAC by Plaintiff Teresa Hornsby for the loans referred to in (6) above, including interest up to and including November 19, 1999, is $25,216.15.

8. The monthly payment for Plaintiff Teresa Horsnby's student loans, based on a 10 year term at 8% interest is $301.24.

9. All loans obtained by Plaintiffs had been in repayment less than seven years at the time of the filing of the chapter 7 bankruptcy.

10. Plaintiffs have made no payments on any of their student loans.

11. The Plaintiffs have 3 dependent children, ages 12, 9 and 6.

12. The Plaintiffs have medical insurance through employer AT & T, with a $10 copay.

13. The Plaintiffs have no child care expense.

14. The Plaintiffs have two (2) new car loans:

a) 1997 Chevrolet Cavalier, purchased 6/19/97, price $17,244.93, monthly payment $435.56. Including interest and fees, the total price was $27,762.07.

b) 1999 Mazda 626, purchased 11/11/98, price $18,644.27, monthly payment $476.42. Including interest and fees, the total price was $30,685.20.

15. The parties have since moved to Stone Mountain, GA., and have incurred a rent increase to $780.00 per month.

16. The parties agree to the authenticity and admissibility of the following documents:

A. Exhibit 1—Plaintiff Steven Lynn Hornsby's Application/Promissory Note for a Guaranteed Student Loan in the amount of $2,625.00 for the loan period 9/15/87–6/3/88.

B. Exhibit 2—Plaintiff Steven Lynn Hornsby's Application/Promissory Note for a Guaranteed Student Loan in the amount of $2,625.00 for the loan period 8/30/89–5/2/90.

C. Exhibit 3—Plaintiff Steven Lynn Hornsby's Application/Promissory Note for a Guaranteed Student Loan in the amount of $4,000.00 for the loan period 8/21/91–5/1/92.

D. Exhibit 4—Plaintiff Steven Lynn Hornsby's Application/Promissory Note for a Guaranteed Student Loan in the amount of $4,000.00 for the loan period 8/21/91–5/1/92.

E. Exhibit 5—Plaintiff Steven Lynn Hornsby's Application/Promissory Note for a Guaranteed Student Loan in the amount of $1,383.00 for the loan period 2/5/92–5/30/92.

F. Exhibit 6—Plaintiff Steven Lynn Hornsby's Application/Promissory Note for a Guaranteed Student Loan in the amount of $1,000.00 for the loan period 2/5/92–5/30/92.

G. Exhibit 7—Plaintiff Steven Lynn Hornsby's Application/Promissory Note for a Guaranteed Student Loan in the amount of $617.00 for the loan period 2/5/92–5/30/92.

H. Exhibit 8—Plaintiff Teresa Lynn Hornsby's Application/Promissory Note for a Guaranteed Student Loan in the amount of $2,625.00 for the loan period 3/28/87–12/3/87.

I. Exhibit 9—Plaintiff Teresa Lynn Hornsby's Application/Promissory Note for a Guaranteed Student Loan in the amount of $2,625.00 for the loan period 1/4/88–8/12/88.

J. Exhibit 10—Plaintiff Teresa Lynn Hornsby's Application/Promissory Note for a Guaranteed Student Loan in the amount of $2,625.00 for the loan period 8/31/88–5/3/89.

K. Exhibit 11—Plaintiff Teresa Lynn Hornsby's Application/Promissory Note for a Guaranteed Student Loan in the amount of $4,000.00 for the loan period 8/21/91–5/1/92.

L. Exhibit 12—Plaintiff Teresa Lynn Hornsby's Application/Promis-

sory Note for a Guaranteed Student Loan in the amount of $4,000.00 for the loan period 8/21/91–5/1/92.

M. Exhibit 13—Plaintiff Teresa Lynn Hornsby's Application/Promissory Note for a Guaranteed Student Loan in the amount of $1,383.00 for the loan period 2/5/92–5/30/92.

N. Exhibit 14—Plaintiff Teresa Lynn Hornsby's Application/Promissory Note for a Guaranteed Student Loan in the amount of $617.00 for the loan period 2/5/92–5/30/92.

O. Exhibit 15—Plaintiff's Answers to Defendant Tennessee Student Assistance Corporation's First Set of Interrogatories, and all documents attached thereto;

P. Exhibit 16—Letter dated May 12, 1999, from Albert B. Merkel responding to request for additional discovery, and all documents attached thereto;

Q. Exhibit 17—Signed promissory note/Bill of Sale for 1997 Chevrolet Cavalier;

R. Exhibit 18—Signed promissory note/Bill of Sale for 1999 Mazda 626;

S. Exhibit 19—Bank Statements, Bank One, Texas, Account # 1888753579. May 19, 1998–August 17, 1999, and account # 1577196824, July 8–28, 1999;

T. Exhibit 20—Plaintiff Steven Horsnby's pay stubs from employer AT & T, January 8, 1999–October 1, 1999;

U. Exhibit 21—Plaintiff Teresa Hornsby's letter from employer Hilton, stating wages paid up to August 23, 1999;

V. Exhibit 22—Telephone bills submitted, September 28, 1998–November 24, 1998, January 28, 1999, May 28, 1999–August 28, 1999;

W. Exhibit 23—Printout of electric bills, August 6, 1998–July 7, 1999;

X. Exhibit 24—Fast food receipts submitted for July, August and September 1999;

Y. Exhibit 25—Grocery receipts submitted for July, August and September 1999;

Z. Exhibit 26—Weekend vacation receipts, August 13–15, 1999.

aa. Exhibit 27—Federal Tax Returns, 1997 and 1998;

bb. Exhibit 28—Federal poverty guidelines for 1999;

cc. Exhibit 29—Lease Agreement, 778 Durham Trail, Stone Mountain, GA;

In addition to these facts, the Court further finds the debtor Steven Hornsby makes $3,514.33 per month. Since moving to Georgia, Teresa Hornsby has not worked outside the home so that she may help her children adjust to living in a new city. Teresa Hornsby did testify, however, that she eventually plans to return to work and expects to earn as much as she was earning at her last job ($8.75/hour). The Hornsbys currently spend $65/month on cable television and $25/month for computer internet service. The Hornsbys do not have any credit cards or charge accounts. The Hornsbys are currently three months behind on the car payments for the 1999 Mazda 626. According to Exhibit 28, the Hornsbys income is nearly twice that of the poverty guidelines for a family of five.

## II. CONCLUSIONS OF LAW

In the opinion remanding this case, the Sixth Circuit set forth the various tests and standards a court must use in evaluating a hardship discharge allegation under § 523(a)(8)(B)0011. *See, Tennessee Student Assistance v. Hornsby Corp. (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998). First and foremost, a court must look to the three-prong test as set forth in the case of *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2d Cir. 1987). These three prongs require the debtor to demonstrate "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if

forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period ...; and (3) that the debtor has made good faith efforts to repay the loans." *Hornsby*, 144 F.3d at 437, (quoting *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356, 359 (6th Cir.1994) (quoting *Brunner*, 831 F.2d at 396)). The Sixth Circuit further stated that "a bankruptcy court might also consider, among other things, 'the amount of the debt ... as well as the rate at which interest is accruing' and 'the debtor's claimed expenses and current standard of living, with a view toward ascertaining whether the debtor has attempted to minimize the expenses of himself and his dependents.'" *Hornsby*, 144 F.3d at 437 (quoting *Rice v. United States (In re Rice)*, 78 F.3d 1144, 1149 (6th Cir.1996)).

The Sixth Circuit stated several reasons for reversing this Court's discharge of the loans and remanding the case for further proceedings. First, the Sixth Circuit stated that this Court had erred in concluding that the Hornsbys had made a good faith effort to repay the loans (the third prong of the *Brunner* test) when the Hornsbys had failed to make even one payment on the loans. *Id.* Secondly, the Sixth Circuit concluded that "[t]he bankruptcy court ... did not support the finding that any present inability to pay would persist for a significant portion of the repayment period.... [T]he Hornsbys are 'young as well as healthy, and in all likelihood [their] income will increase in the future.'" *Id.*

Lastly, and most importantly, the Sixth Circuit stated that although this Court "purported to apply the *Brunner* test of undue hardship, it did not engage in the meaningful inquiry required to evaluate either the Hornsbys' expenses or the extent to which their discretionary income could be applied to their student loans." *Hornsby*, 144 F.3d at 437–438. The Sixth Circuit failed to see how this Court could conclude that the Hornsbys had demonstrated the first prong of the *Brunner* test when the proof clearly showed that the Hornsbys had excessive expenses, a monthly budget surplus and an income well over the poverty guidelines. *Id.* Despite this conclusion, however, the Sixth Circuit did state that "[t]his is not to say that the Hornsbys are not financially burdened; moreover, they need not live in abject poverty before a discharge is forthcoming. *See Rice*, 78 F.3d at 1151 (finding that 'the bankruptcy court must ascertain what amount is minimally necessary to ensure that the dependents' needs for care, including food, shelter, clothing, and medical treatment are met')."

■ After reconsideration of the facts in the case and in light of the directives from the Sixth Circuit, this Court finds that the Hornsbys are not entitled to a discharge of their student loan debts. First, all of the loans obtained by Steven and Teresa Hornsby were incurred between 1987 and 1992. As of the trial of this adversary proceeding, the Hornsbys had not made a single payment on the loans balances. Even though they had taken forebearances on the notes, the Court finds that no good faith effort has been made by the Hornsbys to repay their loans.

Secondly, and most importantly, the Court fails to find that the Hornsbys are without the financial resources to make monthly payments on the loans. Mr. Hornsby is making over $3500/month at his job. Their rent is $780/month. The Hornsbys do not have any credit card debt or any charge accounts. The primary debts in their chapter 7 bankruptcy are these student loans. The original trial in this adversary proceeding was held in 1995. Since that time, the Hornsbys have purchased two new automobiles with monthly payments of over $400 each. The Hornsbys have internet service at home and from this the Court can conclude that at some time the Hornsbys have found it within their means to purchase a computer. The Hornsbys pay $65/month for cable television which, according to Mr.

Hornsby's testimony at trial, includes several movie channels. The Hornsbys took a vacation this past summer. They have receipts from eating out at fast food restaurants. They do not have any child care expenses or any expenses for school tuition. Finally, Steven Hornsby's income is nearly twice that of the national poverty guidelines for a family of five. All of these factors seem to indicate three things: (1) the Hornsbys should have a sizeable amount of disposable income each month with which they could make a portion, if not all, of their student loan payments; (2) the Hornsbys have made no effort to minimize their expenses or adjust their standard of living to the level necessary to pay these loans; and (3) the Hornsbys can maintain a minimal standard of living, without subjecting themselves to abject poverty, and repay their student loans.

Although the Sixth Circuit indicated in their opinion remanding this case that, given its equitable powers, a bankruptcy court may discharge a *portion* of a student loan debt if it finds some financial hardship, this Court finds that the Hornsbys are not entitled to any type of financial hardship discharge of their student loans; however, given the equitable powers the Sixth Circuit talks about in their *Hornsby* opinion, the Court concludes that the Hornsbys are entitled to a graduated repayment schedule of their loans.

### III. ORDER

It is therefore **ORDERED** that the Complaint to Determine Dischargeability of Debt is **DENIED**.

It is **FURTHER ORDERED** that beginning on March 1, 2000, the Hornsbys shall pay to Tennessee Student Assistance Corporation the amount of $300.00 per month.

It is **FURTHER ORDERED** that beginning on January 1, 2001, the Hornsbys shall increase their monthly payment to Tennessee Student Assistance Corporation to the amount of $450.00 per month.

It is **FURTHER ORDERED** that beginning on January 1, 2002, the Hornsbys shall increase their monthly payment to Tennessee Student Assistance Corporation to whatever amount is necessary to pay the balance of their outstanding loans in full by January 1, 2010.

The Court will hold in abeyance its ruling on attorneys fees and expense until the filing of an application by the defendant. **IT IS SO ORDERED.**