**In re Theresa Rae BLAIR, Debtor.**

**Educational Credit Management Corporation, Appellant,**

v.

**Theresa Rae Blair, Appellee.**

**BAP No. AZ–02–1168–RyPB.**

**Bankruptcy No. 01–02315–PHX–GBN.**

**Adversary No. 01–00147–PHX.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Feb. 21, 2003.

Filed March 27, 2003.

James M. Marburger, Madeleine C. Wanslee, Gust Rosenfeld, P.L.C., Phoenix, AZ, for Educational Credit Management Corporation.

Harold E. Campbell, III, Harold E. Campbell, P.C., Tempe, AZ, for Theresa Rae Blair.

Before RYAN, PERRIS, and BRANDT, Bankruptcy Judges.

## OPINION

RYAN, Bankruptcy Judge.

After Theresa Rae Blair ("Debtor") filed a chapter 7[1] petition, she filed a complaint (the "Complaint") to discharge her student loan debts (the "Debts") under § 523(a)(8). After a trial, the bankruptcy court concluded that Debtor did not meet the re-

quirements for dischargeability under § 523(a)(8). However, the court applied its equitable power under § 105(a) and entered an order (the "Order") granting a partial discharge of the Debts.

The Educational Credit Management Corporation ("ECMC") timely appealed.

We REVERSE.

## I. FACTS[2]

Debtor is a single 49–year old woman with no dependants. She incurred three student loans while studying apparel design and manufacturing at the University of Wisconsin.[3] After graduating with a Bachelor of Science Degree in 1991, Debtor had difficulty finding a job in the apparel manufacturing industry. As a result, Debtor started work in the data entry field, earning $7–$11 an hour.

Debtor did not have a medical disability, but she had a knee condition that limited her work to sedentary tasks such as data entry. As of the time of the trial, Debtor worked 40 to 46 hours a week in temporary data entry jobs and took home about $325 a week. Her 1997–2000 income tax returns reflect annual income in amounts ranging between $15,300–$17,400. Debtor paid $244 a week (about $976/month) in rent because she lived in a motel, but she sought more reasonable housing with monthly rent of approximately $550. Debtor's other expenses included $275 per month for her automobile.

In 2001, Debtor received a settlement (the "Settlement") in the amount of $8,000 from a claim in another cause of action. Debtor did not use any of the Settlement

---

**1.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

**2.** The statement of facts is based entirely on the excerpts of record submitted by ECMC.

ECMC did not provide a complete appellate record (the "Record"), supplying only the bankruptcy court's findings of fact and conclusions of law.

**3.** At the time of trial, Debtor owed ECMC $15,117.13 on these loans.

to pay ECMC on the Debts. Instead, Debtor repaid loans from her brother, son, and certain women with whom she lived when she did not have a permanent address. Debtor also used the money to bring car payments current and buy herself a new pair of glasses.

Debtor sought to discharge the Debts under § 523(a)(8).[4] However, the bankruptcy court found that Debtor had not established any of the three prongs of the *Brunner* test.[5] With respect to the first prong, the court noted that Debtor's income is "almost double minimum poverty guidelines established by the Federal Government." Tr. of Proceedings (Oct. 16, 2001), at 79. Therefore, based on her current income, the bankruptcy court determined that she had not shown that she could not maintain a minimal standard of living. Next, the bankruptcy court reasoned that Debtor had not established that her inability to maintain a minimal stan-

dard of living would persist for a significant portion of the repayment period of the loans. As to the third prong, the bankruptcy court found that Debtor had not made good faith efforts to repay ECMC. Rather, Debtor had used the proceeds of the Settlement to repay other creditors.

Despite finding that Debtor had not established "undue hardship," the bankruptcy court discharged half of the Debts, leaving $7,500 with interest accruing at the federal judgment rate.[6] To reach this result, the bankruptcy court relied on its equitable powers under § 105(a)[7] and the Ninth Circuit decision in *Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116 (9th Cir.2000). The bankruptcy court entered the Order, and ECMC timely appealed.

## II. ISSUE

Whether the bankruptcy court erred by granting a partial discharge of the Debts.

---

**4.** Section 523(a) provides in pertinent part:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

. . . .

11 U.S.C. § 523(a)(8).

**5.** In *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108, 1114 (9th Cir. 1998), the Ninth Circuit adopted the three part "undue hardship" test first established by the Second Circuit in *Brunner v. New York State Higher Educ. Servs. Corp. (In re Brunner)*, 831 F.2d 395, 396 (2d Cir.1987). To satisfy the *Brunner* test, the debtor has the burden of proving:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396.

**6.** 28 U.S.C. § 1961 provides the interest rate applicable to federal judgments.

**7.** Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

## III. STANDARD OF REVIEW

■ We review the bankruptcy court's application of a legal standard *de novo*. *See Tully v. Taxel (In re Tully)*, 202 B.R. 481, 483 (9th Cir. BAP 1996).

## IV. DISCUSSION

*The Bankruptcy Court Erred by Granting a Partial Discharge of the Debts.*

■ The bankruptcy court exercised its equitable powers and entered the Order discharging half of the Debts even though Debtor had not established any element of the *Brunner* test. On appeal, ECMC contends that § 105(a) does not permit the bankruptcy court to grant a partial discharge without first finding "undue hardship." [8] We agree.

In *United Student Aid Funds, Inc. v. Taylor (In re Taylor)*, 223 B.R. 747 (9th Cir. BAP 1998), we held that the language of § 523(a)(8) precluded a partial discharge of student loan debts: "the plain language of § 523(a)(8) supports [the] position that the ... student loan debt is *either* nondischargeable or dischargeable on the basis of undue hardship." *Id.* at 752 (emphasis in original).

In *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998), the Sixth Circuit considered partial dischargeability in the § 523(a)(8) context. There, the debtors were spouses who both incurred student loan debts. After they filed a chapter 7 petition, the debtors sought to discharge their student loan debts under § 523(a)(8). The bankruptcy court considered the *Brunner* factors and discharged the full amount of the loans after finding that repayment of the loans would constitute an undue hardship.[9] *See Hornsby*, 144 F.3d at 436. On appeal, the district court affirmed.[10] *Id.* at 436.

On further appeal, the Sixth Circuit reversed. Specifically, the *Hornsby* court found that although the bankruptcy court purported to apply the *Brunner* test of undue hardship, its "analysis simply was not thorough enough to support a finding of undue hardship." [11] *Id.* at 438. The *Hornsby* court addressed the context of student loan discharges under § 523(a)(8), reasoning that "where undue hardship does not exist, but where facts and circumstances require intervention in the financial burden on the debtor, an all-or-nothing treatment thwarts the purpose of the Bankruptcy Act." *Id.* at 439. Therefore, the *Hornsby* court reversed and remanded to the bankruptcy court, stating:

> We conclude that, pursuant to its powers codified in § 105(a), the bankruptcy court ... may fashion a remedy allowing

---

**8.** On appeal, Debtor did not argue that the bankruptcy court erred in not finding undue hardship. Therefore, this issue is waived. *See Brooks v. City of San Mateo*, 229 F.3d 917, 922 n. 1 (9th Cir.2000) ("On appeal, arguments not raised by a party in its opening brief are deemed waived.") (citation omitted).

**9.** Although the bankruptcy court applied the *Brunner* test in determining undue hardship, the Sixth Circuit has not expressly adopted *Brunner*.

**10.** In fact, the district court, before affirming the bankruptcy court, remanded for a specific finding as to whether the debtors' financial conditions were likely to improve. *See Hornsby*, 144 F.3d at 436.

**11.** First, the *Hornsby* court held that the bankruptcy court erred in concluding that the debtors made a good faith effort to repay the loans when they had not made any payment on the loans. *See Hornsby*, 144 F.3d at 438. Further, the *Hornsby* court held that the bankruptcy court "did not support the finding that any present inability to pay would persist for a significant portion of the repayment period." *Id.* Finally, the *Hornsby* court noted that the debtors had a surplus of $200 per month, and their income was significantly above the poverty guideline. *Id.*

the [debtors] ultimately to satisfy their obligations to [the creditor] while at the same time providing them some of the benefits that bankruptcy brings in the form of relief from oppressive financial circumstances.

*Id.* at 440.

On remand, the bankruptcy court in *Hornsby* concluded that the debtors were not entitled to a hardship discharge of their student loan debts because: (1) they made no good faith efforts to repay loans; (2) they had sufficient monthly disposable income to make payments; and (3) they would not be impoverished by repayment. *See Hornsby v. Tennessee Student Assistance Corp. (In re Hornsby)*, 242 B.R. 647, 652–53 (Bankr.W.D.Tenn.1999).

Subsequently, in *Myrvang*, the Ninth Circuit considered the issue of partial discharge in the context of § 523(a)(15)[12] and disagreed with the "all-or-nothing" approach taken in *Taylor*.[13] *See Myrvang*, 232 F.3d at 1123.

In *Myrvang*, the Ninth Circuit acknowledged criticism of *Taylor's* all-or-nothing approach because it had the effect of "rendering large debt more likely of discharge, and reward[s] irresponsible borrowing." *Id.* at 1123 (citing *Great Lakes Higher Educ. Corp. v. Brown (In re Brown)*, 239 B.R. 204, 211 (S.D.Cal.1999)). Relying on the Sixth Circuit's reasoning in *Hornsby*, 144 F.3d 433 (6th Cir.1998), the *Myrvang* court held that a bankruptcy court has the discretion to partially discharge a debt arising out of the terms of a divorce decree: "We believe that construing the words 'such debt' to preclude a partial discharge would run counter to the bankruptcy court's equitable powers under 11 U.S.C. § 105(a)." *Myrvang*, 232 F.3d at 1124.

Neither *Myrvang* nor *Hornsby* provide guidance on how to harmonize the bankruptcy court's equitable powers under § 105(a) with § 523(a)(8). Nonetheless, other courts have considered the issue. *See East v. Educ. Credit Mgmt. Corp. (In re East)*, 270 B.R. 485 (Bankr.E.D.Cal. 2001); *Saxman v. U.S. Dept. of Educ. (In re Saxman)*, 263 B.R. 342 (W.D.Wash. 2001) (appeal pending in the Ninth Circuit); *Yapuncich v. Montana Guaranteed Student Loan Program (In re Yapuncich)*, 266 B.R. 882 (Bankr.D.Mont.2001).

In *East*, the debtor incurred two student loan debts with two separate creditors in the course of his undergraduate and law school educations. After the debtor filed for his bankruptcy, he sought to discharge both debts under § 523(a)(8). As to his undergraduate student loan of $8,331.29,

---

**12.** Section 523(a)(15) prevents an individual debtor from receiving a discharge from any debt:

not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor

and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).

**13.** Specifically, the *Myrvang* court relied upon the § 523(a)(8) analysis in *Hornsby*, and concluded that "[i]ts analysis applies with equal force to dischargeability proceedings under § 523(a)(15)." *Myrvang*, 232 F.3d at 1123–24.

the bankruptcy court found that the repayment of the loan would not impose an undue hardship on the debtor. As a result, the court held that the undergraduate student loan was nondischargeable. *See East*, 270 B.R. at 493–94.

Turning to the law school student loan of $103,708.63, the *East* court considered both *Myrvang* and *Hornsby* and held that "both the Sixth Circuit and the Ninth Circuit appear to have concluded that a 'partial discharge' of a student loan obligation is an option in a dischargeability proceeding under § 523(a)(8)." *Id.* at 493. The *East* court found that it would be an undue hardship for the debtor to repay the loan in full. Because the debtor failed to show undue hardship to repay $44,000 of the law school loan, the bankruptcy court denied dischargeability in that amount and granted a partial discharge on the balance of the law school loan. *Id.* at 496. The *East* court stated that "the Ninth Circuit Court of Appeals does not appear explicitly to have endorsed the concept of a partial discharge where undue hardship has not been demonstrated." *Id.* at 493.

In *Saxman*, the debtor incurred student loan debts in both his undergraduate and law school educations.[14] After filing his chapter 7 petition, the debtor filed an adversary proceeding to discharge his student loans. The bankruptcy court found that the debtor could not maintain a "minimal standard" of living if he repaid both the ECMC and Education loans. However, the bankruptcy court found that the debtor could maintain a minimal standard of living if he repaid the Education loan alone. Relying on *Taylor*, the bankruptcy court concluded that it could not grant a partial discharge and therefore discharged all of the ECMC loan. However, as for the Education loan, the bankruptcy court

found that repaying it did not create an undue hardship and denied the discharge of the loan. *See Saxman*, 263 B.R. at 344–45. On appeal, after *Myrvang* was decided, the district court relied on that authority to hold that partial discharge is allowed under § 523(a)(8). Therefore, the district court remanded to the bankruptcy court "to determine how much of the ECMC loan would create an undue hardship." *Id.* at 345. "Only the portion that results in undue hardship should be discharged." *Id.*

Finally, in *Yapuncich*, the debtor sought to discharge her student loan debt under § 523(a)(8) based on undue hardship. The bankruptcy court concluded that the debtor satisfied all three prongs of the *Brunner* test. *See Yapuncich*, 266 B.R. at 889. Relying on *Hornsby* and *Myrvang*, the *Yapuncich* court held that it had the equitable power under § 105(a) to grant a partial discharge. *Id.* at 894. Therefore, the bankruptcy court discharged all but $20,000 of the student loan debt. *Id.* at 895. According to the *Yapuncich* court, the partial discharge was "consistent with and an equitable balance of the [d]ebtor's right to a fresh start with the policy underlying § 523(a)(8)." *Id.* (citing *Myrvang*, 232 F.3d at 1123).

We agree with the reasoning of *East*, *Saxman*, and *Yapuncich* and believe that a preliminary finding of "undue hardship" is necessary before a bankruptcy court can exercise its equitable powers in granting a partial discharge of student loan debts. *See East*, 270 B.R. at 493; *Saxman*, 263 B.R. at 345; *Yapuncich*, 266 B.R. at 895. This will help ensure that a bankruptcy court's equitable powers do not "swallow whole" the exception to the discharge of student loans. *See East*, 270 B.R. at 493.

---

**14.** At the time of trial, the debtor owed ECMC $83,927.89 and the U.S. Department of Education ("Education") $4,764.67. *See Saxman*, 263 B.R. at 344.

In this case, the bankruptcy court found that Debtor did not meet any of the three tests for undue hardship set out in *Brunner*. Therefore, we need not reach the issue of whether all elements of the *Brunner* undue hardship test must be met before a debtor may obtain a partial discharge under § 523(a)(8). Other courts that have considered the issue have split with regard to whether a debtor has to establish a good faith effort to repay before the debtor may obtain a partial discharge. *See e.g. Tennessee Student Assistance Corp. v. Mort (In re Mort)*, 272 B.R. 181, 185 (W.D.Va.2002) ("in absence of good faith, it was error to discharge any portion of the student loan debt"). *Compare England v. United States (In re England)*, 264 B.R. 38, 51–52 (Bankr.D.Idaho 2001) (granting a partial discharge to the debtors who met the first two prongs of *Brunner*, even though they failed to demonstrate good faith efforts to repay).

As stated above, the bankruptcy court explicitly found that Debtor had not established undue hardship. It should have stopped there. The bankruptcy court erred by thereafter granting a partial discharge of the Debts.[15]

We recognize that by accepting a bankruptcy court's equitable power to grant a partial discharge of a student loan debt under § 523(a)(8), we hold contrary to *Taylor*. However, since *Taylor*, the Ninth Circuit has allowed partial discharge in the context of § 523(a)(15). *See Myrvang*, 232 F.3d 1116. This marks a change of direction from higher authority, and on this basis it is appropriate for us to depart from *Taylor*. *See Vukasovich, Inc. v. Commissioner of Internal Revenue*, 790 F.2d 1409, 1416–17 (9th Cir.1986) (in part quoting Judge Learned Hand: "our function cannot be limited to a mere blind adherence to precedent . . . the measure of its duty is to divine, as best it can, what would be the event of an appeal in the case before it").

## V. CONCLUSION

In sum, the bankruptcy court erred by granting a partial discharge of the Debts.

REVERSED.

---

15. On appeal, ECMC argues that the bankruptcy court erred by reducing the interest rate on the Debts. Because we are reversing the Order on other grounds, we need not reach this issue.

Further, ECMC contends that the bankruptcy court's partial discharge was improper because it arbitrarily reduced the Debts. While we do not reach that issue here, we agree that the Record does not show sufficient analysis to support the 50% reduction of the Debts. *See Hornsby*, 144 F.3d at 438. The "undue hardship" exception in § 523(a)(8) requires the bankruptcy court to discharge only that portion of the debt that would otherwise impose undue hardship.